**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
Civil Action No.:

|  |  |
|---|---|
| POST VOICE LLC, d/b/a *The Pender-Topsail Post & Voice*; JAMES A. PETTIGREW; and KATIE H. PETTIGREW, <br><br> *Plaintiffs*, <br><br> v. <br><br> PENDER COUNTY, NORTH CAROLINA; WILLIAM RANDY BURTON, in his individual capacity and official capacity as CHAIRMAN OF THE PENDER COUNTY BOARD OF COMMISSIONERS; BRENT AARON SPRINGER, in his individual capacity and official capacity as VICE-CHAIRMAN OF THE PENDER COUNTY BOARD OF COMMISSIONERS; and JERRY DAVID GROVES, in his individual capacity and official capacity as MEMBER OF THE PENDER COUNTY BOARD OF COMMISSIONERS, <br><br> *Defendants*. | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> JURY TRIAL DEMANDED |

## <u>INTRODUCTION</u>

1.     Since 2013, Plaintiff Post Voice, LLC has owned and operated *The Pender Topsail Post & Voice* ("*The Post & Voice*"), a weekly newspaper reporting on matters of public concern in Pender County, North Carolina.

2.     *The Post & Voice* and its predecessors have been in continuous operation since the mid-1970s.

3. *The Post & Voice* also qualifies as a "newspaper of record" for the County, publishing legal-notice advertising required to be published by various provisions of the North Carolina General Statutes. *The Post & Voice* further publishes other advertising for Pender County at no cost to the County.

4. *The Post & Voice* is the only newspaper that enters the mail in Pender County in the Periodicals class and, thus, is the only newspaper qualified to publish legal-notice advertising for the County pursuant to N.C. GEN. STAT. § 1-597.

5. *The Post & Voice* also publishes a "Watchman on the Wall" column, written by Plaintiff James A. Pettigrew, alongside political cartoons. Some of those columns address the Pender County Board of Commissioners, including Defendants Chairman William Randy "Randy" Burton, Vice-Chairman Brent Aaron Springer, and Commissioner Jerry David Groves.

6. In March 2025, at a Board of Commissioners Retreat, multiple commissioners expressed distaste for unfavorable "Watchman on the Wall" columns and cartoons published about them, and Commissioner Groves requested that the matter of de-designating *The Post & Voice* as the newspaper of record for Pender County be placed on the agenda for an April 2025 Board meeting.

7. On 22 April 2025, Chairman Groves, while holding up a copy of the 17 April 2025 "Watchman on the Wall" column and cartoon, stated, "This is what we as three county commissioners have to put up with. The citizens' money are [sic] paying for this, and it's time for it to stop." Chairman Burton, Vice-Chairman Springer, and Commissioner Groves then voted to remove all legal-notice and other advertising

from *The Post & Voice* in retaliation for Plaintiffs' publication of unflattering columns and cartoons about them. No alternative explanation was offered for the Board's decision.



*Photograph of Commissioner Groves holding a copy of The Post & Voice during the 22 April 2025 Pender County Board of Commissioners meeting saying "This is what we as three county commissioners have to put up with. The citizens' money are [sic] paying for this, and it's time for it to stop."*

8. Chairman Burton, Vice-Chairman Springer, and Commissioner Groves voted to instead make *The Wilmington StarNews* ("*The StarNews*") the newspaper of record for Pender County. *The StarNews* does not have a Periodicals permit in Pender County and, therefore, it is not qualified to publish legal-notice advertising for the County under N.C. GEN. STAT. § 1-597.

9. Defendants' removal of legal-notice and all other advertising from *The Post & Voice* as punishment for Plaintiffs' constitutionally protected speech violates the First Amendment to the United States Constitution; Article I, Section 14 of the North Carolina Constitution; and Article I, Sections 1 and 19 of the North Carolina Constitution.

10. Through this action, Plaintiffs seek to vindicate their constitutional rights, redress harms caused by Defendants' retaliatory acts, and prevent Defendants from continuing such unlawful retaliation in the future.

11. Plaintiffs further seek declaratory relief clarifying that *The Post & Voice* is the only newspaper qualified to publish legal-notice advertising in Pender County.

## **JURISDICTION**

12. This Court has original subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) and 42 U.S.C. § 1988 because the claims asserted by Plaintiffs arise under the laws of the United States and seek redress for rights guaranteed by the United States Constitution and deprived under color of state law.

13. Plaintiffs further invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## **VENUE**

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because (i) the events giving rise to the claim occurred in this District, and (ii) on information and belief, multiple Defendants reside within this District.

## PARTIES

15.     Plaintiff Post Voice, LLC d/b/a *The Pender-Topsail Post & Voice* is a North Carolina limited liability corporation doing business at 45 Pintail Lane, Rocky Point, North Carolina 28457.

16.     Plaintiff James A. Pettigrew owns *The Post & Voice* along with his wife, Katie H. Pettigrew. He is also managing editor of *The Post & Voice*. He is a citizen and resident of Rocky Point, North Carolina.

17.     Plaintiff Katie H. Pettigrew owns *The Post & Voice* along with her husband, James A. Pettigrew.

18.     Defendant Pender County is a county located in the State of North Carolina. Pender County is governed by a five-member Board of Commissioners.

19.     Defendant William Randy Burton is, and was at all times relevant to this matter, the Chairman of the Pender County Board of Commissioners. Chairman Burton serves as the commissioner for District 2, which encompasses the community of Scotts Hill. He is sued in his individual and official capacity. Upon information and belief, Chairman Burton is a citizen and resident of Scotts Hill, Pender County, North Carolina.

20.      Defendant Brent Aaron Springer is, and was at all times relevant to this matter, the Vice-Chairman of the Pender County Board of Commissioners. Vice-Chairman Springer serves as the commissioner for District 5, which encompasses the communities of Burgaw, St. Helena, and Maple Hill. He is sued in his individual and

official capacity. Upon information and belief, Vice-Chairman Springer is a citizen and resident of Burgaw, Pender County, North Carolina.

21.     Defendant Jerry David Groves is, and was at all times relevant to this matter, a commissioner on the Pender County Board of Commissioners. Commissioner Groves serves as the commissioner for District 3, which encompasses the communities of Rocky Point and Long Creek. He is sued in his individual and official capacity. Upon information and belief, Commissioner Groves is a citizen and resident of Burgaw, Pender County, North Carolina.

## FACTUAL BACKGROUND

### *The Post & Voice* has served the people of Pender County for over fifty years:

1.     *The Pender Topsail Post & Voice* is a locally owned and operated newspaper based in Rocky Point, North Carolina.

2.     Prior to 2012, three newspapers operated independently in Pender County: *The Pender Chronicle* (founded in 1884), *The Pender Post* (founded in 1971), and *The Topsail Voice* (founded in 1991).

3.     In 2012, the corporate owner of *The Pender Post* purchased *The Topsail Voice*, consolidated the two papers, and began publishing under a new name: *The Pender Topsail Post & Voice*. In September 2012, it also purchased *The Pender Chronicle* which became part of the *Pender Topsail Post & Voice*.

4.     Thus, *The Post & Voice* has been the only newspaper published in Pender County since 2012. Many members of the community, including Plaintiffs

James A. Pettigrew and Katie H. Pettigrew, often still refer to *The Post & Voice* as *The Pender Post* out of affection for *The Post & Voice*'s predecessor.

5.      In 2013, Mr. Pettigrew and Mrs. Pettigrew purchased *The Post & Voice* and formed Plaintiff Post Voice, LLC.

6.      *The Post & Voice* publishes a weekly newspaper online and in print, including to paid subscribers in Pender County.

7.      *The Post & Voice* reports on current events and matters of public concern in and around Pender County, including the Pender County Board of Commissioners.

8.      Prior to 2012, all three papers were qualified to publish legal-notice advertising, and most legal-notice advertising was published in *The Pender Post*.

9.      Since 2012, *The Post & Voice*, like its predecessors, has qualified as a newspaper of record for Pender County.

10.      *The Post & Voice* regularly charges Pender County for the publication of tax notices and foreclosure notices from the Pender County Tax Administration and, on occasion, notices from other departments to the extent such notices are legally required to be published.

11.      *The Post & Voice* also charges Pender County for the publication of a "government news block."

12.      *The Post & Voice* publishes additional advertisements for Pender County at no cost to the County, despite incurring printing costs for such advertisements. Advertisements *The Post & Voice* publishes for free include half-page agendas for twice monthly Board of Commissioners meetings as well as all

advertisements for the Parks and Recreation Department, Pender County Library, and the Health Department.

13.    Over the past several years, *The Post & Voice* published approximately $2,000.00 per month in free advertising for Pender County.

**The North Carolina General Statutes regulate the publication of legal advertising:**

14.    North Carolina General Statute § 1-597(a) provides, in part, that:

Whenever a notice or any other paper, document or legal advertisement of any kind or description shall be authorized or required by any of the laws of the State of North Carolina, heretofore or hereafter enacted, or by any order or judgment of any court of this State to be published or advertised in a newspaper, such publication, advertisement or notice shall be of no force and effect unless it *shall be published in a newspaper with a general circulation to actual paid subscribers which newspaper at the time of such publication, advertisement or notice, shall have been admitted to the United States mails in the Periodicals class in the county or political subdivision where such publication, advertisement or notice is required to be published, and which shall have been regularly and continuously issued in the county in which the publication, advertisement or notice is authorized or required to be published, at least one day in each calendar week for at least 25 of the 26 consecutive weeks immediately preceding the date of the first publication of such advertisement, publication or notice*; provided that in the event that a newspaper otherwise meeting the qualifications and having the characteristics prescribed by G.S. 1-597 to 1-599, should fail for a period not exceeding four weeks in any calendar year to publish one or more of its issues such newspaper shall nevertheless be deemed to have complied with the requirements of regularity and continuity of publication prescribed herein.

(emphasis added).

15.    As the only newspaper that is "admitted to the United States mails in the Periodicals class" in Pender County, *The Post & Voice* is the only newspaper that meets the qualifications of N.C. GEN. STAT. § 1-597(a).

16.     Pender County Clerk of Court Elizabeth Craver is on record confirming that *The Post & Voice* is the only publication in the County that is "statutorily qualified" to run legal notices pursuant to N.C. GEN. STAT. § 1-597(a).

### *The Post & Voice* publishes opinion columns and political cartoons critical of Board of Commissioners:

17.     *The Post & Voice* publishes an opinion column entitled "Watchman on the Wall," written by *Post & Voice* managing editor James A. Pettigrew. Mr. Pettigrew's columns are published alongside political cartoons, which he creates.

18.     Mr. Pettigrew's "Watchman on the Wall" columns discuss matters of public concern in Pender County, including actions taken by the Pender County Board of Commissioners and statements made by its members.

19.     Mr. Pettigrew writes the "Watchman on the Wall" column, and *The Post & Voice* publishes it, as a private citizen.

20.     *The Post & Voice*'s publication of the "Watchman on the Wall" columns and cartoons is entirely separate from its publication of both legal-notice and other advertising in that, when it publishes the columns and cartoons, *The Post & Voice* is not acting in its role as a publisher of legal-notice or other advertising.

21.     In fact, *The Post & Voice* maintains separate contact email addresses for its news-reporting operation and its advertising-placement operation, including maintaining a distinct email address specifically for the publication of legal notices separate and apart from other advertising.

22.     On 20 March 2025, *The Post & Voice* published a "Watchman on the Wall" column entitled "Clear as Mud." Appearing alongside the column was a political

cartoon with the heading "Master of Puppets." The cartoon featured Pender County GOP Executive Board Member Phil Cordiero puppeteering Chairman Burton, Vice-Chairman Springer, and Commissioner Groves. A copy of the 20 March 2025 column and cartoon is attached hereto as **Exhibit A.**

23. The 20 March 2025 column criticized Chairman Burton, Vice-Chairman Springer, and Commissioner Groves for failing to publicly advertise a resolution to declare the Board of Directors of Pender EMS & Fire vacant and appoint commissioners to the Board:

> Board members Springer, Burton, and Groves were planning to sneak Phil Cordeiro's Pender EMS and Fire takeover resolution onto the agenda without advertising it publicly. They couldn't risk another room full of angry citizens objecting to the idea.
>
> Remember what happened two meetings ago when Burton's resolution requiring the Pender Sheriff's Office to become ICE agents was met with a hostile, standing room only crowd of opposition, forcing Burton to back down – a resolution that wasn't even supported by the Sheriff.
>
> They didn't want that happening again. And the BOC trio knew they would never get a unanimous vote to add the Pender EMS resolution the agenda with Brad George sitting there. So throw transparency out the window and employ a nearly-never if ever used tactic to get the resolution on the agenda.
>
> Let's vote to suspend the rules and add the resolution. That will only take a simple majority. Forget transparency, forget public input, we want our way so damn the torpedoes, full speed ahead. And this way, there won't be a boardroom full of opposition to the resolution and we can sneak it in.
>
> I have been covering the Pender County Board of Commissioners for more than 15 years. And to my recollection, that has never been done. I could be mistaken, and I welcome a correction if so, but I do not remember a Board ever suspending the rules to break a rule. I would be willing to bet that it was Cordeiro's idea – I can't see Groves, Burton or Springer coming up with that. But that is just my opinion.

**Exhibit A**.

24.     On 3 April 2025, *The Post & Voice* published a "Watchman on the Wall" column entitled "An Epistle." Appearing alongside the column was a political cartoon with the heading "Baby Sitting," featuring a cartoon depiction of Commissioner Groves in a stroller flanked by Chairman Burton and Vice-Chairman Springer. A copy of the 3 April 2025 column and cartoon is attached hereto as **Exhibit B.**

25.     The 3 April 2025 column again criticized Chairman Burton, Vice-Chairman Springer, and Commissioner Groves:

> During the second day of the annual County Commissioner's budget retreat, the board spent time listening to and agreeing with Jerry Groves' baseless accusations and lies. Groves said it, but Randy Burton and Brent Springer agreed, so all three are guilty. During that fateful livestream, the endgame of these attacks on the newspaper was revealed.

> These three men are attempting to carry out Phil Cordeiro's desire to destroy the local newspaper.

> The problem with the paper is this – we are dangerous – dangerous to Groves, Burton, and Springer because we will seek out and print the truth. And this is not healthy for the political careers of those three – and for Cordeiro's agenda. If we don't say what they want us to say, they will destroy *[T]he Post & Voice*.

> So much for transparency. It appears our three commissioners and their handlers prefer working in the dark.

**Exhibit B.**

26.     On 17 April 2025, *The Post & Voice* published a "Watchman on the Wall" column entitled "By the way." Appearing alongside the column was a political cartoon with the heading "All About Transparency?" The cartoon again features Chairman

Burton, Vice-Chairman Springer, and Commissioner Groves surrounding a door with a sign stating "CLOSED SESSION." A copy of the 17 April 2025 column and cartoon is attached hereto as **Exhibit C.**

27.     The 17 April 2025 column stated the following about Commissioner Groves:

> Commissioner Groves is in spin mode, trying desperately to change the meaning of things he has done to his advantage – unsuccessfully.

> At the Board of Commissioner's budget retreat last month, Groves made the accusation that *[T]he Post [&] Voice* and myself were making fun of him because he grew up poor. This is in reference to his infamous "I was washed in a tub by a black woman" statement made back in 2023.

> Now, Groves is spinning this as making fun of him growing up poor – and that is a terrible thing to do. I agree, if it were true. But of course, with Jerry, it's just another lie.

> This is all on video, by the way, and is available for anyone to view and draw their own conclusions.

> At the BOC meeting in question (Sept. 5, 2023 1:33 in the meeting), Groves was questioned during the meeting by a citizen who asked him "Commissioner Groves, did you make racial remarks about blacks?" Groves sat forward in his seat, and then leaned back laughing, not answering the question.

> At the end of the meeting when each commissioner makes remarks, Groves answered her, saying ma'am, I've never done that. Then he launched into the story of being washed in a tub by a black woman when he was a baby. That was the proof he was not a racist.

**Exhibit C.**

**Commissioner Groves raises the matter of removing all advertising from** *The Post & Voice* **at the Pender County Board of Commissioners Retreat:**

28.     On 21 March 2025, the commissioners met for day two of the Pender County Board of Commissioners Retreat, which was livestreamed on the County's website. A recording of the livestream is incorporated herein by reference.[1]

29.     At the retreat, Commissioner Groves referred to "three commissioners being made puppets in the local paper." Commissioner Groves' statement was a direct reference to the 20 March 2025 "Watchman on the Wall" column and "Master of Puppets" cartoon authored by Mr. Pettigrew and published by *The Post & Voice*.

30.     Commissioner Groves further asserted that "it's not fulfilling community expectations to have a paper that makes $100,000.00 a year off of citizens to make fun of county employees." Commissioner Groves' statement that *The Post & Voice* "makes $100,000.00 a year of off citizens" refers to the paper's publication of advertising for Pender County.

31.     Notably, *The Post & Voice* charges Pender County *only* for the government news block, tax notices and foreclosure notices from the Pender County Tax Administration, and, on occasion, advertisements from other departments that are legally required to be published. *The Post & Voice* publishes all other advertisements at no cost to the County.

---

[1] A recording of day two of the retreat can be found at the following link: https://penderconc.portal.civicclerk.com/event/569/media. Discussion of removing legal-notice and other advertising from *The Post & Voice* can be found from 2:01:38 through 2:07:45.

32. Moreover, *The Post & Voice* charges Pender County half of what private businesses are charged to run advertisements.

33. Commissioner Groves went on to state that "we need to address that," presumably meaning that the Board of Commissioners needed to "address" the unfavorable coverage of Chairman Burton, Vice-Chairman Springer, and Commissioner Groves in *The Post & Voice*. Commissioner Groves further asserted that "we need another paper to represent Pender County" and "the citizens deserve facts and not fake news."

34. Chairman Burton and Vice-Chairman Springer expressed agreement with Commissioner Groves' statements about *The Post & Voice*.

35. At one point, Chairman Burton stated that "all newspapers have opinion sections, which are editorial opinion sections, and I don't have any problem with that. That's the First Amendment, and everybody has a right to free speech. I just think where it gets off the rails is if it's on the front page as news[.]" He further expressed that it's "unfortunate for the citizens to have to read things like that."

36. Commissioner Groves concluded the discussion by stating his discontent with *The Post & Voice*'s and Mr. Pettigrew's coverage of him personally and stating that "it's time to move on away from him [Mr. Pettigrew] and get *The StarNews* or whoever to represent Pender County."

37. The matter of removing legal-notice and other advertising from *The Post & Voice* and placing it with *The StarNews* was added to the agenda for the 22 April 2025 Board of Commissioners meeting.

38.    Following the retreat, then County Manager Michael Silverman sent an email to the Board of Commissioners stating, in part, that "utilizing *[T]he Star News* will cost more than utilizing *[T]he Pender Post & Voice*." Commissioner Groves responded: "At any cost we will use *[T]he Star News*." A copy of this email exchange is attached hereto as **Exhibit D.**

**Chairman Burton, Vice-Chairman Springer, and Commissioner Groves vote to remove all legal-notice and other advertising from *The Post & Voice*:**

39.    On 22 April 2025, at a Pender County Board of Commissioners meeting, the commissioners again discussed removing legal-notice and other advertising from *The Post & Voice* and placing it with *The StarNews*. The 22 April 2025 Board of Commissioners meeting was livestreamed on the County's website, and a recording of that livestream is incorporated herein by reference.[2]

40.    Now-Former Pender County Staff Attorney Andrew Hogan and others presented an "analysis" of options for legal-notice advertising based on incorrect information provided to the UNC School of Government that *The StarNews* enters the mail in the Periodicals class to paid subscribers in Pender County. It does not. *The StarNews* does not have a Periodicals permit in Pender County.

---

[2] A recording of the 22 April 2025 Board of Commissioners meeting can be found at the following link: https://penderconc.portal.civicclerk.com/event/504/media. Discussion of removing legal-notice and other advertising from *The Post & Voice* can be found from 2:11:10 through 2:34:20.

41. Interim County Manager Margaret Blue[3] explained that Pender County has used both *The Post & Voice* and *The StarNews* to publish advertising but that the County "typically" uses *The Post & Voice*.

42. Interim County Manager Blue presented a slide with several years of cost data related to legal advertising. For example, in 2024, Pender County spent $84,974.00 to publish 209 advertisements in *The Post & Voice* and $1,052.00 to publish only *one* advertisement in *The StarNews*. The slide further indicated that "Pender Post [is] significantly more affordable."

43. She explained that she could not accurately provide an estimate of future advertising costs, stating that *The Post & Voice* was "pretty consistent" in what it charges Pender County for advertising while, in comparison, *The StarNews* was "more expensive" and varied pricing based on multiple factors.

44. Interim County Manager Blue also indicated that *The StarNews* provided some pricing information. No commissioner or employee had requested similar pricing information from *The Post & Voice* such that the two papers could be fairly compared.

45. Following several minutes of discussion, Commissioner Groves interjected that "it's time to cut to the chase" and – while holding a copy of the 17 April 2025 "Watchman on the Wall" column and referencing Mr. Pettigrew's publishing of editorials about county commissioners for "twenty-seven months" – said

---

[3] Interim County Manager Blue formerly served as the County's Finance Director. She became Interim County Manager on 23 April 2025.

"this is what we as three county commissioners have to put up with. The citizens' money are [sic] paying for this, and it's time for it to stop."



*Photograph of Commissioner Groves holding a copy of The Post & Voice during the 22 April 2025 Pender County Board of Commissioners meeting saying "This is what we as three county commissioners have to put up with. The citizens' money are [sic] paying for this, and it's time for it to stop."*

46.     After Commissioner Groves' comments, Commissioner Jimmy T. Tate asked another county employee whether anyone had contacted the Pender County Clerk of Court about placing legal-notice advertising with *The StarNews*. An employee indicated that he had spoken with "one of her assistants" and the clerk's office would accept legal-notice advertisements placed in *The StarNews*. In response, Commissioner Tate stated that the Clerk of Court told him advertisements placed in *The StarNews* "would not be accepted."

47.     Immediately thereafter, Commissioner Groves moved to use *The StarNews* for all future advertising – including both legal-notice and other advertising – for Pender County. The motion carried three to two. Chairman Burton, Vice-Chairman Springer, and Commissioner Groves voted in favor of the motion. A

copy of the minutes from the 22 April 2025 Board of Commissioners Meeting is attached hereto as **Exhibit E**.

48. Apart from Commissioner Groves' statements, no further explanation was given as to why the Board voted to remove legal-notice and all other advertising from *The Post & Voice* and place such advertising with *The StarNews*, a decision that is both more expensive for the County and fails to meet the statutory requirements of legal notices as outlined in N.C. GEN. STAT. § 1-597(a).

49. As a result of the Board's retaliation, *The Post & Voice* has lost and will continue to lose revenue from legal advertising, forcing it to cut certain aspects of the paper's coverage. For example, advertising revenue from the County paid for local sports coverage. Without that revenue, *The Post & Voice* has reduced its sports coverage to one page.

50. *The Post & Voice* will also reduce the number of pages it prints, including ceasing the free publication of other types of advertisements for the County because it can no longer afford the printing costs.

**<u>*The Post & Voice* sends demand letter addressing the County's unconstitutional actions and receives no response:</u>**

51. On 20 May 2025, counsel for Plaintiffs sent a demand letter (the "Letter") to the Board of Commissioners, including to all five commissioners individually, addressing the Board's unconstitutional actions of removing all legal-notice and other advertising from *The Post & Voice* in retaliation for Plaintiffs' publication of "Watchman on the Wall" columns and cartoons critical of Chairman

Burton, Vice-Chairman Springer, and Commissioner Groves. A copy of the Letter is attached hereto as **Exhibit F.**

52.     The Letter further explained that *The Post & Voice* is the only publication in the county that is statutorily qualified to run legal notices by N.C. GEN. STAT. § 1-597(a).

53.     The Letter demanded that the Board of Commissioners reverse its decision to remove all future legal-notice and other advertising from *The Post & Voice*.

54.     As of the date of this filing, neither Plaintiffs nor their counsel have received a substantive response to the Letter however, on 11 June 2025, Plaintiffs' counsel received a letter indicating that the county was still evaluating the letter and would respond "soon"

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of The First Amendment – 42 U.S.C. § 1983

55.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

56.     This claim is brought by Plaintiffs against Defendants Chairman Randy Burton, Vice-Chairman Brent Springer, and Commissioner Jerry Groves.

57.     This claim is also brought against Pender County, which is sued under this claim for the acts of its Board of Commissioners.

58. The acts of Pender County and Chairman Burton, Vice-Chairman Springer, and Commissioner Groves complained of herein were taken under color of state law.

59. The First Amendment of the United States Constitution provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

60. "The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

61. Plaintiffs have a constitutional right, guaranteed by the First Amendment, to publish editorials and political cartoons that are critical of public officials. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 11 L. Ed. 2d 686, 84 S. Ct. 710, 721 (1964) (explaining that the First Amendment ensures citizens enjoy "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials"); *see also Connick v. Myers*, 461 U.S. 138, 162, 75 L. Ed. 2d 708, 103 S. Ct. 1684, 1698 (1983) (explaining that "[t]he constitutionally protected right to speak out on governmental affairs would be meaningless if it did not extend to statements expressing criticism of governmental officials").

62.     Defendants have deprived Plaintiffs of their right to free speech under the First Amendment to the Constitution of the United States by revoking all legal-notice and other advertising in retaliation for Plaintiffs' protected speech.

63.     The decision to remove all legal-notice and other advertising from *The Post & Voice* was motivated by Chairman Burton, Vice-Chairman Springer, and Commissioner Groves' distaste for editorials and cartoons Plaintiffs published about them.

64.     Thus, Chairman Burton, Vice-Chairman Springer, and Commissioner Groves voted to remove all legal-notice and other advertising from *The Post & Voice* to punish Plaintiffs for their publication of the critical "Watchman on the Wall" columns and cartoons, including but not limited to those published on 20 March 2025, 3 April 2025, and 17 April 2025.

65.     No alternative explanation was provided for the removal of legal-notice or other advertising from *The Post & Voice*.

66.     If not for the publication of the "Watchman on the Wall" columns, Chairman Burton, Vice-Chairman Springer, and Commissioner Groves would not have removed legal-notice or other advertising from *The Post & Voice*.

67.     Defendants' acts were intentional, malicious, willful and wanton in that they set out to and did retaliate against Plaintiffs for their constitutionally protected speech.

68.     Defendants' acts directly caused the monetary and reputational injuries and damages to Plaintiffs described herein.

## SECOND CLAIM FOR RELIEF
## Violation of Article I, Section 14 of the North Carolina Constitution

69.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

70.     This claim is brought by Plaintiffs against Defendants Chairman Randy Burton, Vice-Chairman Brent Springer, and Commissioner Jerry Groves.

71.     This claim is also brought against Pender County, which is sued under this claim for the acts of its Board of Commissioners.

72.     Article I, Section 14 of the North Carolina Constitution declares, in relevant part, that "[f]reedom of speech and of the press are two are the great bulwarks of liberty and therefore shall never be restrained . . . ." N.C. Const. art. 1 § 14.

73.     Article I, Section 14 is "self-executing" and creates "a cause of action against state officials for its violation." *State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d 832, 840-41 (1993) (citing *Corum v. University of North Carolina*, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992)).

74.     Although the North Carolina Supreme Court has "recognized that 'in construing provisions of the Constitution of North Carolina, this Court is not bound by the opinions of the Supreme Court of the United States construing even identical provisions in the Constitution of the United States," North Carolina courts "give great weight to decisions of the Supreme Court of the United States interpreting" such parallel provisions. *Petersilie*, 334 N.C. at 184, 432 S.E.2d at 840-41.

75. The right to free speech under Article I, Section 14 is "violated when 'restrictions are placed on the espousal of a particular viewpoint,' . . . or where retaliation motivated by the content of an individual's speech would deter a person of reasonable firmness from engaging in speech or association." *Harper v. Hall*, 384 N.C. 292, 369, 886 S.E.2d 393, 442 (2023) (citations omitted).

76. Defendants have deprived Plaintiffs of their right to free speech under Article I, Section 14 of the North Carolina Constitution by revoking all legal-notice and other advertising in retaliation for Plaintiffs' protected speech.

77. The decision to remove all legal-notice and other advertising from *The Post & Voice* was motivated by Chairman Burton, Vice-Chairman Springer, and Commissioner Groves' distaste for editorials and cartoons Plaintiffs published about them.

78. Thus, Chairman Burton, Vice-Chairman Springer, and Commissioner Groves voted to remove all legal-notice and other advertising from *The Post & Voice* to punish Plaintiffs for their publication of the critical "Watchman on the Wall" columns and cartoons, including but not limited to those published on 20 March 2025, 3 April 2025, and 17 April 2025.

79. No alternative explanation was provided for the removal of legal-notice or other advertising from *The Post & Voice*.

80. If not for the publication of the "Watchman on the Wall" columns, Chairman Burton, Vice-Chairman Springer, and Commissioner Groves would not have removed legal-notice or other advertising from *The Post & Voice*.

81.     Plaintiffs do not have an adequate alternative state-law remedy, and, therefore, they enjoy a direct cause of action against Defendants for the violation of their rights as guaranteed by the North Carolina Constitution.

82.     Defendants' acts were intentional, malicious, willful and wanton in that they set out to and did retaliate against Plaintiffs for their constitutionally protected speech.

83.     Defendants' acts directly caused the monetary and reputational injuries and damages to Plaintiffs described herein.

**THIRD CLAIM FOR RELIEF**
**Violation of Article I, Sections 1 and 19 of the North Carolina Constitution**

84.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

85.     This claim is brought by Plaintiffs against Defendants Chairman Randy Burton, Vice-Chairman Brent Springer, and Commissioner Jerry Groves.

86.     This claim is also brought against Pender County, which is sued under this claim for the acts of its Board of Commissioners.

87.     Article I, Section 1 of the North Carolina Constitution declares that North Carolinians are entitled to "the enjoyment of the fruits of their own labor." And Section 19 provides that no North Carolinian will be "deprived of his life, liberty, or property, but by the law of the land."

88.     Together, these provisions protect "engaging in any legitimate business, occupation, or trade" unless "the promotion or protection of the public health, morals,

order, or safety, or the general welfare makes [burdensome state action] reasonably necessary." *Kinsley v. Ace Speedway Racing, Ltd.*, 386 N.C. 418, 424, 904 S.E.2d 720, 726 (2024).

89.     Action that interferes with a "legitimate business" is therefore unconstitutional unless it (1) serves a "proper governmental purpose" (2) by way of "reasonable means." *Id.*

90.     Plaintiffs are engaged in the legitimate business of operating a newspaper reporting on local news in and around Pender County. That business also includes selling advertising space to the County.

91.     Chairman Burton, Vice-Chairman Springer, and Commissioner Groves arbitrarily and without legal justification acted to remove all legal-notice and other advertising from *The Post & Voice* to punish Plaintiffs for their publication of unfavorable editorials and cartoons about them.

92.     This action was arbitrary and unreasonable because it was initiated and targeted at Plaintiffs in direct response to Mr. Pettigrew's criticism of Chairman Burton, Vice-Chairman Springer, and Commissioner Groves.

93.     As a direct and proximate result of Chairman Burton, Vice-Chairman Springer, and Commissioner Groves' action, *The Post & Voice* has lost and will continue to lose critical advertising revenue upon which it relies to continue its operations.

94.     Plaintiffs do not have an adequate alternative state-law remedy, and, therefore, enjoy a direct cause of action against Defendants for the violation of their rights as guaranteed by the North Carolina Constitution.

95.     Defendants' acts directly caused the monetary and reputational injuries and damages to Plaintiffs described herein.

## FOURTH CLAIM FOR RELIEF
### Declaratory Judgment

96.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

97.     This claim is brought by Plaintiffs against Defendants Chairman Randy Burton, Vice-Chairman Brent Springer, and Commissioner Jerry Groves.

98.     This claim is also brought against Pender County, which is sued under this claim for the acts of its Board of Commissioners.

99.     28 U.S.C. § 2201(a) provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

100.     There exists an actual controversy as to whether Defendants' action of removing legal-notice advertising from *The Post & Voice* and instead placing it with *The StarNews* satisfies the requirements for the publication of legal advertising under N.C. GEN. STAT. § 1-597(a).

101.    Significantly, as the only newspaper that enters the mail in the Periodicals class to paid subscribers in Pender County, *The Post & Voice* is the only newspaper in Pender County that meets the qualifications of N.C. GEN. STAT. § 1-597(a).

102.    As alleged above, the "legal analysis" of options for legal-notice advertising presented to the Board of Commissioners at the 22 April 2025 meeting was based on incorrect information that *The StarNews* enters the mail in the Periodicals class to paid subscribers in Pender County.

103.    Thus, declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue" and would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

104.    Without declaratory relief, *The Post & Voice* will continue to suffer lost legal-notice advertising revenue.

105.    This Court has jurisdiction pursuant to 28 U.S.C. § 1367 to declare the rights of the parties under N.C. GEN. STAT. § 1-597 and any other relevant statutes.

106.    For the reasons stated above, Plaintiffs are entitled to a declaration that it is the only newspaper qualified under N.C. GEN. STAT. § 1-597(a) to publish legal-notice advertising for Pender County.

## FIFTH CLAIM FOR RELIEF
### Injunctive Relief Against Pender County

107. Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

108. Plaintiffs bring this claim for permanent and preliminary injunctive relief against Pender County.

109. As alleged herein, Plaintiffs have suffered and will continue to violations of their rights under the First Amendment to the United States Constitution; Article I, Section 14 of the North Carolina Constitution; and Article I, Sections 1 and 19 of the North Carolina Constitution related to Defendants' de-designation of *The Post & Voice* as the newspaper of record for Pender County in retaliation for Plaintiffs' constitutionally protected speech.

110. The deprivation of Plaintiffs' constitutional rights constituted irreparable injury such that remedies available at law, including monetary damages, are inadequate to fully compensate for such injury.

111. Considering the balance of hardships between the parties, the public's interest in protecting freedom of speech, and Pender County's indifference toward the egregious violations of Plaintiffs' constitutional rights, a permanent injunction against the County is warranted.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter judgment in its favor and order relief as follows:

A.     Compensatory damages against all Defendants, jointly and severally.

B.     Punitive damages against the individual Defendants, jointly and severally.

C.     A declaration, pursuant to 28 U.S.C. § 2201, that *The Post & Voice* is the only newspaper qualified to publish legal-notice advertising for Pender County pursuant to N.C. GEN. STAT. § 1-597(a).

D.     An injunction ordering Pender County to reinstate *The Post & Voice* as the official newspaper of record immediately for a period continuing through the calendar year following this Court's order and ordering the County and Board of Commissioners to award future designations to newspapers only upon articulable and coverage content-neutral criteria, including the qualifications in N.C. GEN. STAT. § 1-597(a).

E.     A declaration, pursuant to 28 U.S.C. § 2201, that Defendants violated Plaintiffs' right to free speech under the First Amendment to the United States Constitution and Article I, Section 14 of the North Carolina Constitution by de-designating Plaintiff as the official newspaper of record in retaliation for Plaintiff's protected speech.

F.     A declaration, pursuant to 28 U.S.C. § 2201, that Defendants violated Plaintiffs' right to enjoy the "fruits of [their] labor" under Article I, Sections 1 and 19

of the North Carolina Constitution by de-designating *The Post & Voice* as the official newspaper of record in retaliation for Plaintiffs' protected speech.

G.      Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws.

H.      Any other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted this the 1st day of July 2025.

STEVENS MARTIN VAUGHN & TADYCH PLLC     TIN FULTON WALKER & OWEN PLLC

/S/ MICHAEL J. TADYCH
Michael J. Tadych
N.C. State Bar No. 24556
mike@smvt.com
Ashley N. Fox
N.C. State Bar No. 57896
ashley@smvt.com
2225 W. Millbrook Road
Raleigh, NC 27612
Telephone: (919) 582-2300
Facsimile: (866) 593-7695

/S/ABRAHAM RUBERT-SCHEWEL
Abraham Rubert-Schewel
N.C. State Bar No. 56863
schewel@tinfulton.com
Zachary Ezor
N.C. State Bar No. 55070
zezor@tinfulton.com
119 Orange Street, Floor 2
Durham, NC 27701
Telephone: (919) 307-8400

*Attorneys for Plaintiffs*